IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-133-RJ

VICKIE L. WILLIAMS,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Vickie L. Williams ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this Order.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on June 27, 2013, alleging disability beginning November 1, 2004. (R. 356–70). Both claims were denied initially and upon reconsideration. (R. 218–91, 296–304). A hearing before the Administrative Law

Judge ("ALJ") was held on October 27, 2015, at which Claimant, unrepresented by counsel, and a vocational expert ("VE") appeared and testified. (R. 189–217). On November 24, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 97–122). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 95–96), which was denied on January 11, 2017, (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to conduct a

3

proper function-by-function analysis of Claimant's fatigue; and (2) failure to incorporate non-exertional limitations on the ability to stay on task where the ALJ found Claimant to be moderately impaired in the maintenance of concentration, persistence, or pace. Pl.'s Mem. [DE-20] at 1–2.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the amended alleged onset date. (R. 102). Next, the ALJ determined Claimant had the following severe impairments: systemic lupus erythematosus; diabetes mellitus; hypertension; major depression disorder; and posttraumatic stress disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 103). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild restriction in her activities of daily living, and moderate difficulties in social functioning and with regard to concentration, persistence, or pace, with no episodes of decompensation. (R. 103–04).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following restrictions:

> [S]he can only frequently do tasks requiring fingering and handling; occasionally balance on narrow, slippery, or moving surfaces; occasionally climb; occasionally

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

stoop, crouch, kneel, or crawl; no working at heights or around dangerous machinery. The claimant has had a decrease in the ability to concentrate on and attend to work tasks to the extent that she can only do simple, routine, repetitive [tasks] (i.e., can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations); she is able to concentrate for two-hour increments with normal rest breaks (i.e., 15, 30 [ ] minutes); she can never have contact with the public; she is unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

(R. 104–14). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a daycare worker and daycare center director. (R. 114). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 114–15).

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant

5

has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

1. **Maintaining Concentration, Persistence, or Pace**

Claimant contends the ALJ failed to account for her inability to stay "on task" in the RFC, specifically arguing the finding that Claimant can perform "simple, routine, and repetitive" work with no "contact with the public" and no "complex decision making, constant change, or dealing with crisis situations," without more, conflicts with the finding that Claimant has moderate difficulties in concentration, persistence, or pace. Pl.'s Mem. [DE-20] at 8–9. Claimant relies on *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) to contend the ALJ's limitations do not provide for Claimant's ability to stay "on task" which is required for any work.

Pl.'s Mem. [DE-20] at 8–9. The Commissioner counters that this case is distinguishable from *Mascio*, where the ALJ included additional limitations in the RFC and did not only limit Claimant to simple, routine, repetitive tasks. Def.'s Mem. [DE-24] at 10–12.

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, or pace by restricting the hypothetical question to simple, repetitive tasks or unskilled work." *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the claimant's ability to work and would be appropriately excluded from the RFC. *Id.* In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, the ALJ found Claimant to have moderate difficulties with regard to concentration, persistence, or pace. (R. 104). In assessing Claimant's moderate difficulties, the ALJ specifically noted Claimant's complaints of memory problems which reduced her ability to concentrate, that Claimant's "anxiety did somewhat affect her concentration," and that her medication caused her to experience fatigue. *Id.* The RFC formulated by the ALJ, providing a limitation to simple, routine, and repetitive tasks, no contact with the public, and no complex decision making, constant change, or dealing with crisis situations, does not adequately address Claimant's ability to stay on task as required by *Mascio*. The limitations imposed by the ALJ relate to task complexity, and the court has previously held that a limitation to performing simple tasks with few workplace changes addressed difficulties with concentration and persistence, but

7

not pace. *See Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015); *see also Guyton v. Colvin*, No. 7:15-CV-59-FL, 2016 WL 716515, at *3–4 (E.D.N.C. Feb. 5, 2016). The ALJ did not adopt a limitation to address Claimant's moderate difficulty in maintaining the pace necessary to stay on task and it is not evident from the ALJ's decision why such limitation would not be necessary. Cases addressing pace generally, including those cases cited by the Commissioner in this case, Def. Mem. [DE-24] at 11–12, look to whether the ALJ has provided a production limitation in the RFC. *See, e.g., Sizemore v. Berryhill*, 2017 WL 4675712 (4th Cir. 2017) (holding that limitations working in a low stress *non-production* job with no public contact were sufficient to account for moderate limitation in concentration, persistence, or pace); *Bowen v. Berryhill*, No. 5:16-CV-65-F, 2017 WL 1194462 (E.D.N.C. Mar. 31, 2017) (holding that an RFC of simple, routine, repetitive tasks, *no production* work and only occasional interaction with other people was sufficient to account for moderate limitation in concentration, persistence, or pace); *Lee v. Colvin*, No. 5:15-CV-142-D, 2016 WL 816784, at *1–2 (E.D.N.C. Mar. 15, 2016) (finding that an RFC including a limitation against *"fast paced or quota based* work" comports with *Mascio*); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. Aug. 19, 2015) (finding that RFC limitations to a *"low production* occupation" accounted for the claimant's pace, "no constant change" accounted for persistence, and "no loud noises" accounted for concentration). Here, there is no similar production limitation.

Further, the ALJ's discussion cannot be interpreted to limit Claimant's moderate difficulties only to concentration. At step three, the ALJ specifically noted Claimant's fatigue due to her medication, and, in formulating the RFC, the ALJ noted Claimant "had a decrease in the ability to concentrate on *and attend to* work tasks." (R. 104) (emphasis added). In the RFC

discussion, the ALJ noted Claimant's statements that her chemotherapy treatment for lupus caused her to "sleep for days," and a typical day consists of her "l[ying] down mostly and tak[ing] naps." (R. 105). While the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible," the ALJ nonetheless recounted medical records documenting Claimant's complaints of fatigue spanning September 2013–May 2015. (R. 107–13) (citing Exs. 8F, 11F, 15F, 21F, 24F). Therefore, by acknowledging Claimant's fatigue at step three in limiting Claimant's concentration, persistence, or pace, and by recounting medical records demonstrating Claimant's fatigue, it is unclear whether the ALJ found that fatigue affected only her concentration. While the Commissioner has identified medical evidence tending to contradict Claimant's complaints of fatigue, Def.'s Mem. [DE-24] at 7–9, it is not the role of the court to remedy the ALJ's failure to adequately explain his reasoning by engaging in the required analysis in the first instance. *Fox v. Colvin*, 632 F. App'x 750, 754 (4th Cir. Dec. 17, 2015) (per curiam) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford*, 734 F.3d at 296 (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, the case is remanded for the ALJ to sufficiently explain how his finding of moderate difficulties in concentration, persistence, or pace are accounted for in the RFC. Further, on remand, the ALJ should take into consideration Claimant's remaining assignment error that the ALJ failed to conduct a proper function-by-function analysis of her fatigue.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-23] is DENIED and the

case is REMANDED for further proceedings consistent with this order.

So ordered, the 29th day of May 2018.

                                                  Robert B. Jones, Jr.
                                                  United States Magistrate Judge